NEIL H. OLSON *v.* NANCY C. OLSON
(AC 21438)

Foti, Spear and Hennessy, Js.

Argued April 24—officially released August 27, 2002

*Alfred F. Morrocco, Jr.,* for the appellant (plaintiff).

*Michael J. Whelton,* for the appellee (defendant).

### Opinion

FOTI, J. The plaintiff, Neil H. Olson, in this dissolution of marriage action, appeals from the judgment of the trial court awarding to the defendant, Nancy C. Olson, a certain amount of alimony and various assets. The

plaintiff claims that the court improperly (1) heard the case, (2) failed to consider, in determining asset distribution, the parties' stipulation of admissibility regarding financial affidavits purporting to value real property comprising part of the marital estate and (3) required the plaintiff to maintain a life insurance policy for the benefit of the defendant. We affirm the judgment of the trial court.

The following factual background is relevant to our resolution of the plaintiff's claims. The parties were married on June 28, 1970. In May, 1998, the plaintiff filed the action for dissolution, claiming that the marriage had broken down irretrievably. The plaintiff hired an attorney, Theodore J. Wurz, to represent him in the matter. Before the matter was scheduled for trial, the plaintiff filed a motion to disqualify Judge Anne C. Dranginis from hearing the case. The motion to disqualify was based on a "prior interaction between [the] plaintiff's counsel and Judge Dranginis . . . ." Judge Dranginis and Wurz had been involved in a matter that ultimately was resolved by the Judicial Review Council. On March 31, 2001, Judge Dranginis granted the plaintiff's motion. Prior to trial, however, the plaintiff hired new counsel, Alfred F. Morrocco, Jr., to represent him. In response, Judge Dranginis vacated her previous order granting the plaintiff's motion to disqualify and decided to hear the case. The plaintiff objected to the court's decision and orally moved for Judge Dranginis to disqualify herself. The court denied the plaintiff's motion. On November 7, 2000, the court dissolved the parties' marriage and rendered orders involving, inter alia, alimony, property distribution and insurance. Additional facts will be set forth as necessary.

I

The plaintiff first claims that Judge Dranginis improperly decided to hear the case after she had recused

herself from the proceedings. Specifically, the plaintiff claims that Judge Dranginis' alleged "bias toward [Wurz]," which necessitated her recusal in the first place, "must flow and be passed on to" the plaintiff such that she was thereby required to disqualify herself from presiding over the case.

The following additional facts are relevant to the plaintiff's claim. Prior to the plaintiff's motion to disqualify Judge Dranginis, she had had very little do with the case or its litigation other than when the parties sought a pendente lite order, sought continuances and when Wurz made an appearance on December 20, 1999, in lieu of the plaintiff's original attorney, John F. Harvey, Jr. The plaintiff filed his first motion to disqualify Judge Dranginis about three months after Wurz had appeared on his behalf. Subsequently, the plaintiff replaced Wurz with Morrocco as his counsel. On the day of trial, after learning that Wurz had been replaced, Judge Dranginis vacated her prior order of disqualification and heard the case because the ground for her recusal, namely, Wurz's participation in the case, no longer existed. In response, the plaintiff orally moved for Judge Dranginis' recusal on the basis of a "lingering" bias and the "mere appearance" of partiality.[1] The court denied that motion for lack of a sufficient basis.

Before we reach the merits of the plaintiff's claim, we must determine whether the plaintiff has provided us with an adequate record for review. The defendant argues that the plaintiff's claim should not be addressed because his oral motion to disqualify Judge Dranginis did not comply with Practice Book § 1-23, which provides: "A motion to disqualify a judicial authority shall

---

[1] Canon 3 (c) (1) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ."

be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

In response to the defendant's argument, the plaintiff asserts that because the court previously had granted his written motion to disqualify, there was no need to file another written motion because the first motion already was part of the record. He further claims that the basis of the recusal cannot cure itself automatically and that for a client's sake, once a judge is recused, that recusal should continue. We are not persuaded.

Practice Book § 1-23 " 'creates a mandatory procedure to be followed by any party seeking to recuse a judge' "; *Wendt* v. *Wendt*, 59 Conn. App. 656, 694, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000); and, if a party fails to follow such procedures, the record is deemed to be inadequate for our review because they are "a condition precedent to a hearing on a judge's disqualification." *State* v. *Weber*, 6 Conn. App. 407, 413, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986). Further, "[r]epresentations made by counsel are not evidence in the record upon which we can rely in our review of the judge's conduct. . . . The lack of a recusal hearing leaves the record bereft of any factual basis upon which we may base our review." (Citation omitted.) Id.

We conclude that the plaintiff has failed to provide an adequate record because he failed to follow the procedures in Practice Book § 1-23. The plaintiff, in making his second motion to disqualify, completely failed to comply with even a single requirement set forth in Practice Book § 1-23. His motion was made

orally, it lacked an affidavit containing factual allegations, and there was no certificate by counsel that the motion was made in good faith. "Furthermore, the [plaintiff] never requested nor demanded a hearing in order to present evidence to support his claim of judicial recusal"; *State* v. *Weber*, supra, 6 Conn. App. 413; and he did not request a continuance to gather evidence thereof.[2]

The plaintiff's first motion to disqualify Judge Dranginis was grounded specifically on past interactions between her and Wurz. That ground no longer existed when the plaintiff made his oral motion for Judge Dranginis' disqualification. Stated differently, the two motions were mutually exclusive such that the plaintiff cannot now successfully argue that the record is adequate for this court to review the trial court's denial of his oral motion to disqualify Judge Dranginis on the basis of the record of the first motion to disqualify. Essentially, the plaintiff attempts to cure fatal procedural defects in his second motion to disqualify by tying it into and making it part of his previous motion to disqualify. We will not reward such an attempt to circumvent our well established procedural rules concerning the disqualification of judges. Moreover, the plaintiff could have requested a continuance to give him time to file a second motion to recuse and thereby to comply with Practice Book § 1-23, but failed to do so.

"Since the [plaintiff] has failed to supply the necessary record, as was his burden, we are precluded from

---

[2] We further note that because the plaintiff, when questioned by the court, was unable to provide it with facts regarding Judge Dranginis' alleged bias other than his claims of a "lingering" bias and the "mere appearance" of partiality, he would not have been entitled to an evidentiary hearing even if he had made such a request because "vague and unverified assertions of opinion and speculation are nowhere near factually sufficient to trigger an evidentiary hearing into a judge's impartiality." *Szypula* v. *Szypula*, 2 Conn. App. 650, 656, 482 A.2d 85 (1984).

finding that the action of the trial judge in refusing to recuse [herself] was clearly erroneous." *State* v. *Weber*, supra, 6 Conn. App. 413. Additionally, the plaintiff has failed to marshal any support for his contention that once a judge has granted a motion to disqualify, the disqualified judge is stripped of his or her discretion on the matter and permanently barred from hearing the case, even if the grounds for disqualification cease to exist before the trial commences.

## II

The plaintiff next claims that the court, in determining asset distribution, failed to take into consideration the parties' stipulation regarding the admissibility of all financial affidavits valuing real estate that comprised part of the marital estate. Specifically, the plaintiff claims that because the parties stipulated to the admissibility of such affidavits, the court "should have considered [the] evidence and awarded more of the assets to the plaintiff . . . ."

It is well settled that in a dissolution of marriage action, the distribution of assets rests within the sound discretion of the court, which is guided by several factors set forth in General Statutes § 46b-81 (c).[3] "While a trial court must consider a number of factors in awarding alimony and distributing the assets of the parties, and may exercise broad discretion in that consideration . . . it need not recite each factor in its decision, and

---

[3] Subsection (c) of General Statutes § 46b-81, which statute is entitled "Assignment of property and transfer of title," provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

it is sufficient that the memorandum of decision "at least reflect a proper consideration and weighing of the factors set forth in the statute." (Citation omitted; internal quotation marks omitted.) *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 564, 621 A.2d 309 (1993). "In determining whether the trial court abused its discretion the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Fucci* v. *Fucci*, 179 Conn. 174, 181, 425 A.2d 592 (1979).

The plaintiff and the defendant had stipulated to the admissibility at trial of financial affidavits concerning the value of certain real property. Specifically, one particular financial affidavit purported to value an office condominium wherein the plaintiff conducted his medical practice. The affidavit was admitted into evidence for the court's consideration along with the plaintiff's testimony regarding encumbrances on the property, his interest in it and his opinion as to its market value.

The plaintiff argues that the court "knowingly ignored" the evidence and distributed property contrary to it. Contrary to the plaintiff's assertion, however, the court, indeed, considered the evidence before it and determined that "there was not competent evidence presented . . . for the court to determine that [the plaintiff's office condominium had] a negative equity value." The court stated further "that the equity values are suggested by the financial affidavits, but I don't know that the court has adequate evidence to put a definitive figure on that."

It is axiomatic that " '[t]he trier [of fact] is free to accept or reject, in whole or in part, the evidence offered by either party.' " *Lidman* v. *Nugent*, 59 Conn. App. 43, 46, 755 A.2d 378 (2000). Here, the court expressed its opinion as to the weight of the evidence regarding the valuation of the property in question and determined,

in its sound discretion guided by § 46b-81 (c), that such evidence did not establish definitively the property's value. Moreover, the simple fact that the parties stipulated as to the admissibility of the financial affidavits does not require the court to accept it as conclusive evidence of anything whatsoever because " '[d]ivorce courts are specifically not bound by stipulations or agreements entered into by the parties.' " *Sands* v. *Sands,* 188 Conn. 98, 103, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983); see also *Sweet* v. *Sweet,* 190 Conn. 657, 662, 462 A.2d 1031 (1983).

We conclude that the court properly considered the evidence and distributed the property accordingly. Further, the transcript of the court's decision " 'reflect[s] a proper consideration and weighing of the factors set forth in [§ 46b-81 (c)].' " *Siracusa* v. *Siracusa,* supra, 30 Conn. App. 564. We cannot say that the court abused its discretion in valuing the plaintiff's office condominium because it was reasonable for the court to conclude as it did on the basis of the evidence before it.

### III

The plaintiff claims finally that the court improperly ordered him to designate and to maintain $600,000 worth of his existing $800,000 life insurance policy for the benefit of the defendant irrespective of the termination of alimony in the event of statutory cohabitation or remarriage.

We decline to address the plaintiff's claim because " '[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief.' " *State* v. *Van Eck,* 69 Conn. App. 482, 493, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92 (2002). The plaintiff failed to provide this court with a standard of review; see *Wren* v. *MacPherson Interiors, Inc.,* 69 Conn. App. 349, 359, 794 A.2d 1043 (2002);

and his claim is based on an argument that consists of nothing more than conclusory statements devoid of any analysis. In one instance, for example, the plaintiff claims in his brief that "[l]ife insurance is not a property interest" to be made an asset of the marriage, but fails to provide this court with any legal support for his proposition. Moreover, the plaintiff cites only a single case; *Damon* v. *Damon*, 23 Conn. App. 111, 579 A.2d 124 (1990); and for a reason that is not patently clear to this court because it lends no support whatsoever to his argument.

We have long held that "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *State* v. *Van Eck*, supra, 69 Conn. App. 493. Because the plaintiff's claim is based entirely on conclusory statements devoid of any law and analysis, we will not address it.

The judgment is affirmed.

In this opinion the other judges concurred.