******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MACK MILNER
(SC 19759)

Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 6, 2016—officially released March 28, 2017*

*James E. Mortimer*, with whom, on the brief, was *Michael D. Day*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom were *David M. Carlucci*, assistant state's attorney, and, on the brief, *Gail P. Hardy*, state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. Following an incident at Saint Francis Hospital and Medical Center in Hartford, the defendant, Mack Milner, was convicted of one count of interfering with an officer in violation of General Statutes § 53a-167a (a), one count of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1), and two counts of disorderly conduct in violation of General Statutes § 53a-182 (a) (2) and (3). The issue before this court is whether the judge who presided over the criminal trial abused his discretion in denying the defendant's oral motion for disqualification following the judge's disclosure that he previously had been employed by the hospital. We conclude that the limited facts in the record provide no basis to conclude that the trial court abused its discretion.

The record reveals the following undisputed facts. In addition to the four counts of which he was convicted, the state charged the defendant with one count each of the crimes of reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a) and disorderly conduct in violation of § 53a-182 (a) (1). All of the charges stemmed from the defendant's conduct both inside and outside of the emergency department at the hospital, where he sought treatment for scratches sustained in an altercation earlier that evening. Specifically, the defendant was alleged to have nearly hit a hospital security guard with his vehicle when arriving at the drop off area for the emergency department and, after entering the emergency room, to have been loud and disruptive as he waited for treatment. The defendant repeatedly refused the staff's demands to leave the premises after he was initially evaluated. He also was alleged to have acted aggressively and threateningly toward the police officers who had been summoned to escort the defendant from the premises.

Judge Kwak presided over the trial. Jury selection took place on June 19, 2014. On June 23, 2014, the day before the state was set to commence presentation of its case-in-chief, an off-the-record meeting occurred between Judge Kwak and counsel. The following day, immediately before the commencement of evidence, defense counsel made an oral motion to disqualify Judge Kwak, citing the judge's disclosure in chambers the prior day that he had previously served as the hospital's director of risk management. The defendant argued that the hospital was the victim of the criminal trespass charge, and that Judge Kwak's prior employment would give rise to the appearance of bias insofar as he would have discretion to impose a sentence in the event the defendant were found guilty of that charge. The state declined to be heard on the matter.

In response to the defendant's motion, Judge Kwak stated: "I've consulted the [Code of Judicial Conduct],

rule 2.11 specifically, regarding disqualifications, and I've read everything there and I don't believe it's going to be a conflict.

"I don't work for [the] [h]ospital. I did not recognize any of the names that were mentioned by [the prosecutor] as possible witnesses. Yes, it does involve [the] [h]ospital, to the extent that the incident allegedly occurred there, but [the hospital] is really not a party here.

"It's the [s]tate versus [the defendant]. Therefore, I don't see a reason why I need to recuse myself. Certainly, I'm going to be fair and impartial to both parties. Therefore, your motion is denied."

After the matter was submitted to the jury, the court declared a mistrial on the reckless endangerment count and one of the disorderly conduct counts. The jury returned a verdict of guilty on the charge of criminal trespass, as well as the three other charges. Judge Kwak thereafter imposed a total effective sentence of two years imprisonment, execution suspended after one year, and two years of probation. The defendant appealed from the judgment to the Appellate Court, and the appeal was subsequently transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendant claims that Judge Kwak abused his discretion in declining to disqualify himself. The defendant asserts that Judge Kwak improperly based his decision solely on the question of actual bias and that the judge's prior employment created an appearance of bias that required his disqualification. The state contends that the defendant's claim is unreviewable because his motion for disqualification was procedurally defective. We disagree with the state as to the issue of reviewability and reject the defendant's claim on the merits.

I

We begin with the question of whether the defendant's claim is amenable to review. The state points to the defendant's failure to comply with Practice Book § 1-23, insofar as that rule requires that a motion for judicial disqualification be in writing and accompanied by an affidavit setting forth the facts relied on and a certificate of counsel attesting that it was made in good faith.[1] We disagree that there is a per se rule that noncompliance with the rule's procedural requirements is fatal to review. We further conclude that the defendant's claim is amenable to review under the circumstances of the present case.

Initially, we note that the defendant's claim of judicial bias was preserved via his oral motion for disqualification. The trial court and the state were put on notice of the claim, and neither objected to the motion's form or the defendant's good faith basis for so moving. The

trial court's ruling squarely addressed the ground on which the defendant's oral motion was made.

As a general matter, in determining whether a preserved claim is amenable to review, it is well settled that the appellant is obligated to present a record that contains the requisite facts necessary to resolve the claim. See *State* v. *Santangelo*, 205 Conn. 578, 584, 534 A.2d 1175 (1987). In the present case, the record must reveal whether disqualification was warranted under the circumstances. See *State* v. *Bunker*, 89 Conn. App. 605, 613, 874 A.2d 301 (2005) ("A factual basis is necessary to determine whether a reasonable person, knowing all of the circumstances, might reasonably question the trial judge's impartiality. . . . It is a fundamental principle that to demonstrate bias sufficient to support a claim of judicial disqualification, the due administration of justice requires that such a demonstration be based on more than opinion or conclusion." [Internal quotation marks omitted.]), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). Compliance with the procedures set forth in Practice Book § 1-23 ensures that facts are placed on the record that are necessary for appellate review. See *State* v. *Santangelo*, supra, 584–85; *State* v. *Messier*, 16 Conn. App. 455, 458, 549 A.2d 270, cert. denied, 209 Conn. 829, 552 A.2d 1216 (1988), overruled on other grounds by *State* v. *Smith*, 317 Conn. 338, 354–55, 118 A.3d 49 (2015).

This court has never held, however, that noncompliance with Practice Book § 1-23 renders a claim of judicial bias per se unreviewable. Indeed, the appellate case law suggests a more fact specific approach. In *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 746–48, 444 A.2d 196 (1982), this court held that the trial judge improperly declined to disqualify himself after an oral motion for recusal had been made on the ground that the judge had made statements concerning the case in an interview with a reporter that was published in the newspaper the prior day. This court concluded that the trial judge's response to the motion, following his denial of a request for an evidentiary hearing; id., 750; in and of itself, "demonstrated such a personal interest in the case that his impartiality could reasonably be questioned." Id., 753. This court noted that the claim was "reviewable . . . because it goes to the defendants' fundamental right to a fair trial." Id., 740. Although there was no challenge to the form of the motion, the issue was brought to this court's attention insofar as the defendants also had challenged the denial of a written motion for recusal "concern[ing] a separate ground for recusal [that was] basically unrelated" to the oral motion. Id., 746.

In *State* v. *Santangelo*, supra, 205 Conn. 584, 601, however, this court squarely addressed this issue, reviewing claims that the trial court improperly had denied two motions for recusal despite the fact that

neither complied with the requirements of Practice Book § 997, the predecessor to Practice Book § 1-23.[2] The defendant had filed a written motion for disqualification, unaccompanied by either a factual affidavit or a certificate of counsel attesting that it was made in good faith, alleging that the trial judge had actively participated in pretrial plea negotiations. Id., 584–85. We held that, "[i]n view . . . of the serious consequences of the defendant's conviction and the fact that his claim goes to his fundamental constitutional right to a fair trial, we will review the available record despite its procedural deficiencies." Id., 585. The defendant also had made an oral motion to disqualify the trial judge from the sentencing proceeding after the judge received and read a letter from a police officer that "contained unsubstantiated, inflammatory comments and accusations concerning the defendant." Id., 601. Although we noted that "[o]ral motions to disqualify simply do not comport with acceptable procedure," the court nevertheless considered the merits of the claim "[i]n view . . . of the lengthy sentence imposed on the defendant . . . ." Id.

Consistent with the aforementioned cases, this court has reviewed unpreserved claims of judicial bias pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see *State* v. *Rizzo*, 303 Conn. 71, 115, 31 A.3d 1094 (2011), cert. denied,     U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012); and the plain error doctrine. See *State* v. *D'Antonio*, 274 Conn. 658, 670–74, 877 A.2d 696 (2005); *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). Application of such review cannot be squared with a per se rule that noncompliance with the procedural requirements of Practice Book § 1-23 renders such a claim unreviewable. Indeed, such review is authorized in part because a judge has an independent obligation to "recuse herself or himself from a matter . . . sua sponte . . . if such judicial authority is disqualified from acting therein pursuant to [c]anon 3 (c) [now rule 2.11] of the Code of Judicial Conduct . . . . Practice Book § 1-22 (a)." (Footnote omitted; internal quotation marks omitted.) *State* v. *D'Antonio*, supra, 670.

A number of Appellate Court cases have reviewed claims of judicial bias despite acknowledging that the moving party had failed to comply with the written procedures required in Practice Book § 1-23. For example, the Appellate Court has addressed the merits of a denial of an oral motion for disqualification because of the seriousness of the claimed bias. See, e.g., *Tracey* v. *Tracey*, 97 Conn. App. 278, 279, 280 n.2, 903 A.2d 679 (2006) (reviewing denial of oral motion for disqualification alleging appearance of bias where trial judge who decided dissolution action then ruled on motion for fees to defend appeal, because of, inter alia, "gravity of the matter"); *State* v. *Messier*, supra, 16 Conn. App. 458 (reviewing denial of oral motion for disqualification

alleging appearance of bias from trial judge's participation in pretrial phase of case because of "the serious consequences of the defendant's conviction and the fact that his claim goes to his fundamental, constitutional right to a fair trial" [internal quotation marks omitted]); see also *Emerick* v. *Emerick*, 170 Conn. App. 368, 373–74, A.3d (2017) (reviewing denial of oral motion for disqualification alleging trial judge was biased against plaintiff on basis of his gender and status as self-represented party, even after concluding that record was inadequate for review as result of noncompliance with § 1-23, because of "the grave nature of [the] accusation"). The Appellate Court also has addressed the merits of a denial of an oral motion for disqualification when the factual basis of the motion was apparent from statements by the court in the record and from the motion made shortly thereafter. See, e.g., *In re Messiah S.*, 138 Conn. App. 606, 625, 53 A.3d 224 (reviewing denial of oral motion for disqualification made during trial in response to judge's comments and rulings), cert. denied, 307 Conn. 935, 56 A.3d 712 (2012); *Giordano* v. *Giordano*, 9 Conn. App. 641, 643, 520 A.2d 1290 (1987) (reviewing denial of oral motion for disqualification made on record immediately after in-chambers conference on third day of six day trial where basis of motion was comment made by judge during conference).

The Appellate Court cases relied on by the state are not to the contrary. In both *State* v. *Weber*, 6 Conn. App. 407, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986), and *Olson* v. *Olson*, 71 Conn. App. 826, 804 A.2d 851 (2002), the moving party had made an oral motion for disqualification, but the *only* evidence in support of the allegation of an appearance of bias was the disputed representations of counsel. In *Weber*, the Appellate Court noted that "[r]epresentations made by counsel are not evidence in the record upon which we can rely," and that "[t]he lack of a recusal hearing le[ft] the record bereft of *any factual basis* upon which we may base our review." (Emphasis added.) *State* v. *Weber*, supra, 413. The court thus concluded that because "the defendant has failed to supply the necessary record, as was his burden, we are precluded from finding that the action of the trial judge in refusing to recuse himself was clearly erroneous." Id. In *Olson*, the court reached the same conclusion. See *Olson* v. *Olson*, supra, 831–32. Because the basis of the motions for disqualification in those two cases relied solely on the representations of counsel, it is evident why the absence of an affidavit or an evidentiary hearing precluded appellate review. See *State* v. *Santangelo*, supra, 205 Conn. 585 (after noting absence of affidavit or evidentiary hearing and that it would not rely on representations of defense counsel in its review, court looked to representations of prosecutor and trial court itself made on record to hold that trial court's participation

in pretrial plea negotiations was minimal); *State* v. *Bunker*, supra, 89 Conn. App. 613 (evidence of bias sufficient to support claim of judicial disqualification must be "based on more than opinion or conclusion" [internal quotation marks omitted]). To the extent that the state suggests that *Weber* and *Olson* stand for the proposition that noncompliance with Practice Book § 1-23 per se precludes review of a denial of an oral motion for disqualification, irrespective of whether the record contains a sufficient factual basis in support of that motion, we decline to adopt such a broad interpretation of these cases.

Turning to the present case, we are persuaded that the record is adequate for review, notwithstanding the defendant's failure to comply with Practice Book § 1-23. As previously stated, the trial court acted on the defendant's oral motion in the absence of any objection by the state, thus reflecting that both understood the factual basis of the motion. See *Tracey* v. *Tracey*, supra, 97 Conn. App. 280 n.2 (reviewing claim of judicial bias despite noncompliance with § 1-23 because, inter alia, "court acted on the defendant's oral motion without objection by the plaintiff"). Significantly, the factual basis for the defendant's claim is Judge Kwak's own representation, which he confirmed on the record, that he previously had been employed as director of risk management for the hospital. In the absence of any dispute as to the factual basis of the disqualification motion, the lack of an evidentiary hearing or formal factual findings is not fatal to review of the defendant's claim. See *Szypula* v. *Szypula*, 2 Conn. App. 650, 653–56, 482 A.2d 85 (1984) (claim of judicial bias requires evidentiary hearing where factual dispute exists); see also *In re Messiah S.*, supra, 138 Conn. App. 625 and n.11 (reviewing claim of judicial bias despite noncompliance with § 1-23, no evidentiary hearing, and no factual findings, when record reflected undisputed facts that provided basis for claim). Finally, we note that the defendant's oral motion was made at the first available opportunity to place it on the record. See *Giordano* v. *Giordano*, supra, 9 Conn. App. 643. Given the limited and undisputed nature of the defendant's claim and mindful of the timing of Judge Kwak's disclosure, we conclude that the record is adequate for our review.

This is not to say that the defendant's noncompliance with the requirements of Practice Book § 1-23 is without consequence. As we explain in part II of this opinion, our review is limited to those facts that are established in the record. Moreover, we do not intend to suggest that noncompliance with § 1-23 could never be fatal to a trial court's consideration of a claim of judicial disqualification or to appellate review of such a claim. We simply conclude that it is not fatal under the record presented in this case.

II

We now turn to the merits of the defendant's claim that the trial court's ruling denying his oral motion for judicial disqualification was improper in two respects. First, he contends that Judge Kwak applied the wrong standard in deciding the disqualification motion insofar as Judge Kwak considered only whether he could, in fact, be impartial and thus failed to analyze whether his impartiality might reasonably be questioned. Second, the defendant contends that there was an appearance of impartiality insofar as (1) the hospital was the victim of the criminal trespass charge and Judge Kwak had discretion to impose a sentence on the defendant if he were found guilty of that crime, and (2) it was reasonable to assume that the judge's former position as the director of risk management entailed devising policies for the safety of patients and staff, which gave Judge Kwak personal knowledge of facts relevant to this matter. We disagree.

Rule 2.11 (a) (1) of the Code of Judicial Conduct provides in relevant part that "[a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned including, but not limited to, the following circumstances . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." "In applying this rule, [t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted." (Citations omitted; internal quotation marks omitted.) *State* v. *Rizzo*, supra, 303 Conn. 118–19. Our review of the trial court's denial of a motion for disqualification is governed by an abuse of discretion standard. See *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 823–24, 717 A.2d 1232 (1998).

In the present case, Judge Kwak stated that he had reviewed rule 2.11 of the Code of Judicial Conduct in its entirety prior to defense counsel's oral request for disqualification. The plain language of rule 2.11 sets forth the objective standard for determining whether disqualification is warranted—i.e., whether the judge's impartiality might reasonably be questioned. Moreover, before deciding the motion, Judge Kwak placed on the

record additional facts relevant to the objective inquiry of whether an appearance of bias might exist, including that he no longer worked for the hospital and that he did not recognize any names on the prosecutor's list of potential witnesses. From this, it is fair to assume that the trial court reflected on the appropriate standard and rendered a conclusion consistent with its application of an objective inquiry. The mere fact that Judge Kwak used the first person when he stated, "I don't believe it's going to be a conflict" and "I don't see any reason why I need to recuse myself," does not establish that he considered only whether he subjectively believed that he could remain impartial. It is well settled that "[w]e do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." *State* v. *Crumpton*, 202 Conn. 224, 231, 520 A.2d 226 (1987); see also *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 739 n.25, 937 A.2d 656 (2007) ("in the absence of an articulation—which the appellant is responsible for obtaining—we presume that the trial court acted properly"). Because nothing in the record indicates otherwise, we conclude that the correct legal standard was applied.

Turning to the defendant's claim that Judge Kwak's impartiality reasonably might be questioned, we note that, because the defendant declined to file an affidavit or seek an evidentiary hearing, the record consists only of Judge Kwak's representations to counsel. Those representations established the following facts: Judge Kwak worked for the hospital as the director of risk management prior to his appointment to the bench; he no longer worked at the hospital in any capacity; and he did not recognize the names of any of the state's potential witnesses. In our view, a reasonable person presented with these facts would not doubt Judge Kwak's impartiality to the extent he would have the discretion to impose a sentence on the defendant if he were found guilty of the charge of criminal trespass.

Insofar as the defendant suggests that a reasonable person would assume that Judge Kwak's responsibilities as the director of risk management would have included creating policies and safeguards to prevent criminal activity at the hospital, he has established no facts in the record from which such an inference could be drawn. The job title alone does not provide such a basis. Judge Kwak may have been responsible for assessing actuarial risk for insurance purposes or minimizing the risk of the spread of disease. Even if the scope of Judge Kwak's responsibilities could have included or related to the prevention of criminal activity, the defendant has failed to establish when the judge held that position and for how long. It was the defendant's burden to establish the factual basis that created an appearance of bias or partiality. See *State* v. *San-*

*tangelo*, supra, 205 Conn. 584. The defendant clearly has not met this burden. Accordingly, Judge Kwak properly denied the defendant's motion for disqualification.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Practice Book § 1-23 also provides that "[t]he motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." The state does not challenge the timeliness of the defendant's motion, effectively conceding that the judge's late disclosure constituted good cause for the timing of the request.

[2] The rule of practice in effect at that time, Practice Book § 997, imposed the same requirements as Practice Book § 1-23.