******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GINA CIMINO *v.* JOSEPH CIMINO
(AC 35945)

DiPentima, C. J., and Keller and Prescott, Js.

*Argued October 21, 2014—officially released February 3, 2015*

(Appeal from Superior Court, judicial district of New
Haven, Gould, J.)

*James F. Cirillo, Jr.*, for the appellant (plaintiff).

*Christopher T. Goulden*, with whom, on the brief,
were *Janis M. Laliberte* and *Margaret Sullivan*, for the
appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Gina Cimino, appeals from certain financial orders associated with the judgment of the trial court dissolving her marriage to the defendant, Joseph Cimino. On appeal, the plaintiff claims that the court improperly (1) determined the value of the marital home to be $575,000, (2) awarded alimony of $600 per week for a period of ten years, and (3) failed to award her one half of the defendant's retirement accounts. We affirm the judgment of the trial court.

In a memorandum of decision dated July 25, 2013, the court found the following facts pertinent to this appeal. The parties' twenty-nine year marriage had broken down irretrievably and neither party was more at fault than the other for the breakdown. The plaintiff was fifty-four years old, in reasonably good health, and a college graduate with a Master's degree in business administration. The parties stipulated the plaintiff's earning capacity to be $37,000 per year. Although she had not worked outside of the home since 1990, the plaintiff had a business making wreaths and ornaments.

The defendant has been employed by the Internal Revenue Service for thirty years and, at the time of trial, earned $119,548 per year. At the time of the memorandum of decision, the defendant had a thrift savings plan with a balance of $124,377.16 and a retirement fund, in lieu of social security, in the amount of $147,000. During the pendency of the divorce, the plaintiff had withdrawn $129,000 from joint family accounts.

The court found the value of the marital home to be $575,000. The defendant and members of his family had built the home, and it was not encumbered by a mortgage. The home needed substantial repairs with respect to both the interior and the exterior.

On the basis of these findings, the court awarded exclusive possession of the marital home to the defendant and ordered him to pay the plaintiff one half of the fair market value of $575,000, less closing costs and commissions, and less $129,000, representing the sum of money withdrawn by the plaintiff during the divorce proceedings. The court further ordered the defendant to pay alimony in the amount of $600 per week for a period of ten years to the plaintiff. The plaintiff was awarded the thrift savings plan valued at approximately $124,000 and an individual retirement account valued at $11,216. The defendant was awarded the retirement fund. This appeal followed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has

abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Keenan* v. *Casillo*, 149 Conn. App. 642, 644–45, 89 A.3d 912, cert. denied, 312 Conn. 910, 93 A.3d 594 (2014); see also *Mensah* v. *Mensah*, 145 Conn. App. 644, 651, 75 A.3d 92 (2013).

The plaintiff first claims that the court improperly found the value of the marital home to be $575,000. This claim is without merit. A February, 2013 appraisal, admitted into evidence, concluded that the fair market value of the marital home was $575,000. Although there was other evidence, including testimony from the parties,[1] that the home's fair market value was higher, the court was not required to accept those figures. "[A] trial court has broad discretion in determining the value of property. In assessing the value of . . . property . . . the trier arrives at [its] own conclusions by weighing the opinions of the appraisers, the claims of the parties, and [its] own general knowledge of the elements going to establish value and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as [it] finds applicable; [its] determination is reviewable only if [it] misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 233, 987 A.2d 362 (2010); see also *Porter* v. *Porter*, 61 Conn. App. 791, 799–800, 769 A.2d 725 (2001). We conclude that the court's determination regarding the value of the marital home, based on an appraisal admitted into evidence, was proper.

The plaintiff's final two claims challenge the court's financial orders. First, the plaintiff claims that the court improperly awarded alimony of $600 per week for a period of ten years. Specifically, she argues that she should have received nearly $800 per week for a period of sixteen years. We are not persuaded by the plaintiff's claim.

We begin by setting forth our standard of review. "We will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did. . . . A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . .

"A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481–82, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004); see also *Traystman* v. *Traystman*, 141 Conn. App. 789, 794–95, 62 A.3d 1149 (2013).

The legal principles that guide our analysis are well established. In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in General Statutes § 46b-81 (division of marital property), General Statutes § 46b-82 (alimony), and General Statutes § 46b-84 (child support). *Brown* v. *Brown*, 130 Conn. App. 522, 526–27, 24 A.3d 1261 (2011). "All three statutory provisions require consideration of the parties' amount and sources of income in determining the appropriate division of property and size of any child support or alimony award. . . . With respect to the present claim concerning alimony, General Statutes § 46b-82 (a) provides in relevant part: In determining whether alimony should be awarded, and the duration and amount of the award, the court shall hear witnesses, if any, of each party . . . shall consider the length of the marriage . . . the age . . . station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . . The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional

requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Citation omitted; internal quotation marks omitted.) *Brown* v. *Brown*, supra, 527.

The court did not abuse its discretion with respect to its alimony award to the plaintiff. It noted that it had reviewed the statutory factors enumerated in the General Statutes and described the income and assets of the parties. See *Keenan* v. *Casillo*, supra, 149 Conn. App. 664. The court correctly applied the law and reasonably awarded the plaintiff alimony in the amount of $600 per week for a period of ten years. It bears repeating that "[t]rial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 330, 913 A.2d 1096 (2007).

Last, the plaintiff claims that the court improperly failed to award her one half of the defendant's retirement accounts. Specifically, she argues that the court should have equally divided both the thrift savings plan and the retirement fund. She further contends that because the defendant testified that he intended to work for an additional sixteen years, the retirement account will have an additional $78,400 at the time of the defendant's retirement.

The plaintiff's argument overlooks the fact that the court, in distributing the marital assets, awarded her the thrift savings account that had a balance of $124,377.16, and an individual retirement account listed on the defendant's financial affidavit that had a balance of $11,216. Although the plaintiff assumes that the defendant's retirement funds will grow over the next sixteen years, she fails to apply that principle to her own assets. After a review of the record, we conclude that the court properly applied the relevant statutory criteria and did not abuse its discretion in its division of the defendant's retirement accounts. See, e.g., *Cunningham* v. *Cunningham*, 140 Conn. App. 676, 689, 59 A.3d 874 (2013).

The judgment is affirmed.

[1] The plaintiff testified that she did not know what the value of the home was, but was willing to accept the defendant's opinion that its fair market value was $750,000. She stated that the roof and several appliances needed repairs. The plaintiff also indicated that both the kitchen and master bedroom were not finished, and the second floor bathroom had mold issues. All of the windows in the home either were warped or rotted. There were a number of problems with the electrical wiring and fixtures. The plaintiff noted that the home required between $250,000 to $300,000 in repairs.

The defendant testified that he had paid for an appraisal of the marital home, and that report indicated that it was worth $750,000. He also agreed that the home required "a lot of work to be done; both repairs and original construction of the home."

The defendant subsequently testified that he was aware of some deterioration in the home between the two appraisals of $750,000 and the $575,000, respectively. He noted that water damage would get worse if not attended

to. Nevertheless, in his opinion, the higher appraisal was more realistic.

---